IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSVALDO ELIAS, | No. C 08-2798 TEH (PR) |
| Petitioner, | |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| ROBERT AYERS, Warden, | |
| Respondent. | |

Pro se Petitioner Osvaldo Elias, a state prisoner incarcerated at San Quentin State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") August 7, 2007 decision to deny him parole. Doc. #1. On January 9, 2009, the Court issued an Order to Show Cause why the writ should not be granted. Doc. #3. On March 3, 2009, Respondent filed an Answer. Doc. #4. On April 3, 2009, Petitioner filed a Traverse. Doc. #5.

After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010) (en banc), which addressed important issues

relating to federal habeas review of BPH decisions denying parole to California state prisoners. On May 3, 2010, the Court ordered the parties to file supplemental briefing explaining their views of how the Hayward en banc decision applies to the facts presented in Petitioner's challenge to BPH's decision denying him parole. Doc. #6. Respondent filed supplemental briefing on May 25, 2010; Petitioner filed his on June 22, 2010. Doc. ## 7 & 8.

Having considered all of the papers filed by the parties, the Court DENIES the Petition.

I

The following summary of the facts of Petitioner's commitment offense is taken from the probation officer's report as read at Petitioner's August 7, 2007 parole suitability hearing:

> On October 3, 1991, the Oakland Police Department responded to a report of a drive-by shooting at the corner of 94th Avenue and A Street. Officers found a 14-year-old teenager, Adolpho Espinoza on the ground suffering from three gunshot wounds. The victim was transported to the county hospital where he died the next day. It appears that the victim was standing on the corner when a large, dark-colored sedan drove by with the occupants, shooting at the victim. The follow-up investigation points to three young men being involved in this offense, Cesar Estrada is alleged to have been the driver of the car which contained Jose Cervantes and [Petitioner]. It is Cervantes and [Petitioner] who are alleged to have fired their separate guns at the victim who was killed.

Doc. #4-1 at 40-41.

Petitioner was convicted of second degree murder with an

2

attached firearm enhancement and was sentenced to sixteen years-to-life in state prison. Doc. #4-1 at 30. His life term began on May 12, 1997; his minimum eligible parole date was August 4, 2003. Id.

On August 7, 2007, Petitioner appeared before BPH for his third parole suitability hearing. Doc. #4-2 at 58. At that hearing, BPH found Petitioner was not yet suitable for parole, expressing concern over the commitment offense, Petitioner's unstable family history, insufficient participation in self-help programs while in prison, lack of sufficient insight into his gang-related activities, his prison disciplinary record that included a recent 128 violation for disrespecting prison staff, and the lack of completely supportive findings by prison doctors with respect to his potential to engage in future violent acts. See Doc. #4-5 at 74.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts. Doc. #4-5 at 74; Doc. #4-6 at 2. On April 23, 2008, the California Supreme Court summarily denied Petitioner's petition for review. Doc. #4-8 at 2. This federal Petition for a Writ of Habeas Corpus followed. Doc. #1.

II

In Hayward, the Ninth Circuit explained the law in California as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this

3

> individual." The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."
>
> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

Hayward, 603 F.3d at 561-62 (footnotes and citations omitted).

The court further explained that:

> [s]ubsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence . . . and In re Shaputis, . . . that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." . . . There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." . . . The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports

4

>     the inference of dangerousness. . . .  Thus, in
>     California, the offense of conviction may be
>     considered, but the consideration must address
>     the determining factor, "a current threat to
>     public safety."

Hayward, 603 F.3d at 562 (footnotes and citations omitted).

After providing this background on California law as it applies to parole suitability determinations, the court then explained the role of a federal district court charged with reviewing the decision of either the BPH or the governor in denying a prisoner parole.  According to the Ninth Circuit, this Court must decide whether a decision "rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"  Hayward, 603 F.3d at 562-63 (citations omitted); see also Cooke v. Solis, 606 F.3d 1206, 1208, n. 2 & 1213 (9th Cir. 2010) (applying Hayward and explicitly rejecting the state's argument that "the constraints imposed by AEDPA preclude federal habeas relief" on petitioner's claim; noting that in Hayward, the court "held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA").

### III

When assessing whether California's parole board's suitability determination was supported by "some evidence," this Court's analysis is framed by the state's "regulatory, statutory and constitutional provisions that govern parole decisions in

5

California." <u>Cooke</u>, 606 F.3d at 1213 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th 616 (2002)); <u>see</u> <u>Hayward</u>, 603 F.3d at 561-62. Under California law, prisoners serving indeterminate life sentences, like Petitioner, become eligible for parole after serving minimum terms of confinement required by statute. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1069-70 (2005). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this determination, BPH must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release. <u>See</u> Cal. Code Regs. tit. 15, § 2402(b)-(d).

In considering the commitment offense, BPH must determine whether "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Code Regs. tit. 15, § 2402(c)(1). The factors to be considered in making that determination include: "(A) Multiple victims were attacked, injured or killed in the same or separate incidents; (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) The victim was abused, defiled or mutilated during or after the offense; (D) The offense was carried out in a manner which demonstrates an exceptionally callous

6

disregard for human suffering; (E) The motive for the crime is inexplicable or very trivial in relation to the offense." Id.

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor [in determining a prisoner's parole suitability] is whether the inmate poses a current threat to public safety . . . ." In re Lawrence, 44 Cal. 4th 1181, 1191 (2008).  And, "the core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's <u>current</u> dangerousness." Id. at 1205 (emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 & Dannenberg, 34 Cal. 4th 1061).  The court further explained that:

> a parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." . . . These factors are designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205-06 (citations omitted).  The relevant inquiry, therefore, is:

> whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense.  This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254-55 (2008).

7

The evidence of current dangerousness "must have some indicia of reliability." <u>In re Scott</u>, 119 Cal. App. 4th 871, 899 (2004) (<u>Scott I</u>).  Indeed, "the 'some evidence' test may be understood as meaning that suitability determinations must have some rational basis in fact." <u>In re Scott</u>, 133 Cal. App. 4th 573, 590, n. 6 (2005) (<u>Scott II</u>); <u>see</u> <u>also</u> <u>Cooke</u>, 606 F.3d at 1216 (holding that the state court decision upholding the denial of parole was "'"based on an unreasonable determination of the facts in light of the evidence[],'" <u>Hayward</u>, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(2))," and therefore finding petitioner entitled to habeas relief because "[n]othing in the record supports the state court's finding that there was 'some evidence' in addition to the circumstances of the commitment offense to support the Board's denial of petitioner's parole").

## IV

After reviewing the petition filed in superior court challenging Petitioner's August 7, 2007 parole denial, the court affirmed BPH's decision to deny Petitioner parole, finding it was supported by "some evidence."[1]  Doc. #4-5 at 74.  The court noted:

The record presented to this Court for review

---

[1] Here, the state appellate courts summarily denied Petitioner relief; the state superior court was the highest state court to address the merits of Petitioner's claim in a reasoned decision.  It is that decision, therefore, that the Court analyzes.  <u>See</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000); <u>Williams v. Rhoades</u>, 354 F.3d 1101, 1106 (9th Cir. 2004) (federal court may look to any lower state court decision that was examined, and whose reasoning was adopted, by the highest state court to address the merits of a petitioner's claim).

>               demonstrates that there was certainly some
>               evidence, including, but not limited to the
>               committing offense, Petitioner's unstable family
>               history, Petitioner's insufficient participating
>               in self help programs, Petitioner's lack of
>               sufficient insight into his gang related
>               activities, Petitioner's prison disciplinary
>               record including a recent 128 violation for
>               disrespecting prison staff, and the lack of
>               completely supportive findings by Doctors
>               Kornberg and Starrett.  There is nothing in the
>               record indicating that the Board's decision was
>               arbitrary or capricious, nor that Petitioner's
>               . . . due process rights were violated.  Thus,
>               Petitioner has failed to meet his burden of
>               sufficiently proving or supporting the
>               allegations that serve as the basis for habeas
>               relief.

Doc. #4-5 at 74.  After careful review of the law and the evidence, and as set forth below, this Court cannot say that the state court's approval of BPH's decision to deny Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable determination of the facts in light of the evidence.  See Hayward, 603 F.3d at 563.

As an initial matter, the record shows that, at Petitioner's August 7, 2007 parole suitability hearing, BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole.  Doc. #4-1 at 35-40; Doc. #4-2 at 58-71.  The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was not yet suitable for parole and would pose a current unreasonable risk of danger to

society or threat to public safety if released from prison.  Doc. #4-2 at 60-70; see Lawrence, 44 Cal. 4th at 1191, 1205; Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

In its decision denying Petitioner parole, BPH acknowledged Petitioner's "very strong and somewhat widespread family support," but also noted that his parole plans "lack[ed] specificity, particularly with [respect to] employment."  Doc. #4-2 at 62-63; see id. at 27-29.  BPH observed that Petitioner had an "unstable social history," specifically noting his "gang affiliation since he was 13 years of age."  Id. at 63; see Doc. #4-1 at 48-49. BPH further stated that Petitioner

> was a drop out in school and living at home at this time.  And wasn't working, was getting more involved in the gang, had gotten his young girlfriend pregnant when she was approximately 15, so was basically a father when he was around 16 years of age when this life crime occurred. And basically, he was living with his girlfriend and his baby with no viable means of support.

Doc. #4-2 at 63.  With respect to Petitioner's institutional behavior, BPH stated that Petitioner "has not sufficiently participated in beneficial self-help and that his misconduct includes one 128 counseling chrono that he incurred in April of 2006 for disrespect towards staff."  Id.  BPH also noted that both Petitioner's April 2005 and April 2007 psychological evaluations were "not totally supportive of release" and stated that the psychologist who evaluated Petitioner in April 2007 observed that Petitioner had only just "begun to program beginning in the early

10

2000's [sic] and [that he needed] to continue along this path." Id. at 63-64; <u>see</u> id. at 9-16.  BPH also quoted from Petitioner's April 2005 evaluation, in which the doctor observed, "[t]he lack of a relationship between [Petitioner] and the victim suggests a random nature to his violent act which may . . . increase [the] risk of dangerousness."  Id. at 64; <u>see</u> id. at 16.

        Regarding the commitment offense, BPH stated that Petitioner:

> did commit the offense in a very cruel manner, specifically, he made the choice to arm himself with a loaded weapon, get in that car, and go ahead and along with the driver and his other crime partner.  He also made the choice to shoot that weapon, ended up taking [the] life of a 14-year-old kid and then took off, and then basically, I believe he was at large for close to a year.  [The crime] was carried out in a very calculated manner, when, again, these three . . . affiliated gang members decided to go into that area where these rival gang people lived and specifically wanted to hurt somebody all to get even.  It was a gang retribution on a lot of different levels, so it really shows a total disregard for human life or human suffering.  They didn't think in terms that somebody could actually lose their life.  They were just going to hurt somebody.

Doc. #4-2 at 66-67.

        BPH concluded the hearing by recommending that Petitioner remain disciplinary free, continue to participate actively in self-help programming, including being able to tell BPH at subsequent hearings how the programming has benefitted Petitioner, and cooperate with clinicians in completing an upgraded psychological evaluation.  Doc. #4-2 at 71.

        Based on the entire body of evidence presented at

11

Petitioner's August 7, 2007 parole suitability hearing, the Court cannot say that the state court's approval of BPH's decision to deny Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable determination of the facts in light of the evidence. See Hayward, 603 F.3d at 563. Petitioner therefore is not entitled to federal habeas relief.

V

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED. Further, a certificate of appealability is DENIED. See Hayward, 603 F.3d at 554-55. Petitioner has failed to make "a substantial showing of the denial of a constitutional right." Id. (citing 28 U.S.C. § 2253(c)(2)). Nor has Petitioner demonstrated that his claim is "debatable among reasonable jurists." See Hayward, 603 F.3d at 555.

The Clerk of Court shall terminate all pending motions as moot, enter judgment in accordance with this Order and close the file.

IT IS SO ORDERED.

DATED    08/12/10    

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.08\Elias-08-2798-deny petition-bph post-hayward.wpd

**12**